The Chief Justice delivered the opinion of the court.
Certain of the subjects brought before us by the discussion of this case have recently undergone an examination by Chancellor "Williamson, and an opinion respecting them was delivered by him in March last, in the case of the administrators of Daniel Wilmurt, deceased, against Jonathan EL Morgan; from which the following extract is made.
“ The first objection which I shall notice is one that lies at the foundation of the sale, and which, if well taken, would render it unnecessary to consider any other of the objections made by the defendant; and is, that the order of the court directing the sale is irregular and insufficient to enable the administrators to convey the legal title to the estate. After looking into the order, I have no hesitation in declaring that I consider it erroneous and irregular, and that in my opinion it might have been set aside if a certiorari had been brought within the time limited by law, and the proceedings removed into the Supreme Court. I consider it irregular in not designating the particular part of the intestate’s estate which was to be sold, and that it is contrary to the provisions of the act of the legislature to make a general order, as has been done in this case, for administrators to sell so much of the real estate as shall be necessary to satisfy the debts without specifying the part to be sold. The legislature have not thought proper to leave it to administrators or executors to judge of the necessity of selling the whole or a part of the real estate or what part to sell. But these matters are to be settled and determined by the court, for the act says, the court shall order and direct the executors or administrators to sell the whole if *425 necessary of the lands, &c., or so much thereof as will be sufficient for that purpose, and when a part only is sufficient, such order shall specify the part to be sold; and if a part cannot be sold without manifest prejudice to the person interested, the court may at their discretion order the whole, or a greater *part than is necessary to pay [*342 the debts, to be sold, &c., Lev. Laws 435, s. 20.
In my opinion also it was the duty of the court to examine and ascertain that the personal estate which had come to the hands of the administrators, had been applied by them in the course of administration, before making the order for salo. And this, by the express language of the twenty-fourth section, which is introduced as a proviso to the four preceding sections, and intended to limit and restrain the power therein given. I3y the nineteenth section, when executors or administrators discover that the personal estate is insufficient to pay the debts it is made their duty as soon as convenient to make and exhibit under oath a just and true account of the personal estate, and of the debts as far as they can discover the same, to the Orphans’ Court of the county where the lands lie. And the Orphans’ Court are then to make an order directing all persons interested to appear before them as directed by the act. This first order may be applied for and made as soon as it is discovered that the personal estate is insufficient for the payment of all the debts. Eut to prevent an abuse of this power by a sale of more of the real estate than may he necessary, the legislature by the twenty-fourth section expressly provide that no part of the lands, tenements and real estate, of any testator or intestate, shall be ordered by the said Orphans’ Court to be sold as aforesaid, until the executor or administrator shall have applied the personal estate, or such part thereof as may have come to his hands, towards payment of the debts of such testator or intestate. The sections and provisions are perfectly consistent, and I cannot but consider the twenty-fourth section as a very *426 salutary provision and one which ought strictly to be adhered to, and that no order for sale ought to be made as long as the executors or administrators have assets in their hands, which ought to be applied by them to the payment of debts. To obtain the order for a sale it is not necessary that all the personal estate should be collected and applied in payment of debts, but it is necessary that it should be ascertained by the court, upon examination, that the personal estate is insufficient, and that it should be made to appear that so much thereof as has come to the hands of the executor or administrator, has been applied. ' As there is too much reason to believe that these salutary provisions of *343] the act are not sufficiently *attended to, I have thought it my duty not to pass in silence over the objections taken to the proceedings of the court making the order.”
Upon full consideration of the act of the legislature, our opinions entirely coincide with the doctrine thus laid down by the chancellor. It is the duty ,of the Orphans’ Court making an order for the sale of real estate, under this act, to direct, in and by their order, a sale of the whole of the real estate, if a sale of the whole be in their opinion necessary ; and to order a sale of a part, if the sale of part will in their opinion be sufficient for the payment of the debts ; and if they direct the sale of a part, they are to specify and direct, in and by their order, what part is to be sold. It is the duty of the court to ascertain and decide, whether a sale of the whole is necessary, or whether the sale of a part will suffice; and if they find that the sale of part only will suffice, and ought to' be made, then to ascertain and decide what part ought, in legal propriety and sound discretion, to be sold. The examination and adjustment of these important matters have been committed by the legislature to the impartiality, integrity snd intelligence of the court, and not to the choice or judgment of the executors or administrators, however worthy of confidence they may be. Uor can. *427 the court delegate tho performance of those powers and the discharge of these duties to other persons. The policy of the provision, if necessary to be sought, is obvious. To increase the amount of sale is always the direct interest of .the executor or administrator, and concerned in the real estate or connected or related to those who are, as they oftentimes are and always may be, an independent tribunal has been erected to direct their conduct in these respects, in which interest or partiality might unintentionally mislead or- bias their judgment. The language of the act is so plain and explicit as to leave no serious doubt or difficulty respecting its true meaning and just construction. Ft was remarked, on the argument, that the making of general orders to sell the whole estate or so much as might be sufficient to pay the debts, has prevailed very extensively in the Orphans’ Courts, and that much mischief may ensue from now declaring them to be erroneous and liable to be set aside. A loose and careless practice, it is to be lamented, has prevailed; but if indeed general, it is by no means universal. The balance of mischief, if an account could be accurately stated, would, it is believed, be greatly to the credit of a Continuance of the practice. The hazard [*344 of declaring such orders irregular will be found too, on mature reflection, to be much less than at first sight may bo supposed. But whatever weight might justly be due on a doubtful statute to a general practice affording a practical and contemporaneous construction, or to anticipated consequences, such considerations seldom avail any thing against clear and unambiguous expressions.
It is the plain duty of the court also, as a preliminary to an order for sale to ascertain and decide, not only that the personal estate is insufficient to pay the debts, but that such) part thereof as may have come to the hands of the executor or administrator lias been applied to that purpose. An application for the order may he made as soon as convenient after the executor or administrator shall discover or believe that *428 the personal estate is insufficient, and the order to shew cause and other steps preparatory to the order for sale may be made and taken; but the order for sale should not be made until it has appeared to the court on the full examination, which, according to the terms of the act, they are directed and bound to make, that the personal estate which has come to the hands of the executor or administrator has been applied towards payment of the debts. By this rule we are not to be understood to mean that if an executor or administrator has misapplied or wasted assets which may have come to his hands, and thereby rendered them totally irrecoverable and inapplicable to the payment of debts, that the power of the Orphans’ Court to make a sale for the actual honest deficiency which the real estate ought to supply, is thereby destroyed. In such case the general power of the court remains; but in the exercise of it due care should be taken that the executor or administrator may not cover his own delinquency under the sale which he may make.
Upon comparing the order brought before us by the present certiorari, with the rules and provisions thus established by act of the legislature, it is found irregular and erroneous in two important particulars.
1st. In the first place the order was prematurely made.
From the papers returned here, and which were exhibited to the Orphans’ Court by the executor himself, it appeared that he had not applied towards the payment of the debts the personal estate which had come to his hands: — nay, if *345] anything certain can *be understood from such vague and indefinite proceedings, the court have authorized and ordered a sale of real estate to satisfy a deficiency, a large portion of which was created by an application of assets to the payment of legacies instead of debts, and to satisfy interest accruing upon debts claimed by the executor, and remaining unpaid in consequence of such application.
John Stillwell, the executor, had exhibited an account in the Orphans’ Court, on which a decree of allowance was *429 made in July, 1819. In this account lie claimed allowance lor certain specific legacies of personal estate, amounting to §269.50, and at tlio loot a balance of §507.51 is found, and declared to be due to tlio accountant. In July term, 1824, be presented a petition stating that he had filed an oatli of the situation of the estate of the deceased, together with an account of the settlement of the estate by him; from which it appeared that the personal estate of the deceased was insufficient to pay the debts and discharge the demands against the same, and praying a decree. The account referred to has been already mentioned. The oath states ■that his account was settled and allowed in July, 1819, by which a balance of §507.61 was reported to be due to him, on which interest was due and owing from the time of the settlement; and that since the settlement he had not received any personal estate of the testator, nor did lie know of any that was not settled and allowed in the said account, to pay the balance. At October term, 1824, the decree for sale was made. It was said on the argument at the bar, that certain cabinet maker’s tools and other articles, specifically bequeathed to Paul Micheau, had been in his possession some time before the decease of the testator, and doubts might justly be entertained whether they belonged to the latter. No claim to them, however, as his property appears to have been set up by Micheau, and the executor iu his account asks allowance for their value, not a$ chattels improperly inventoried, or otherwise irrecoverable, but as bequeathed and delivered to Micheau.
Expressing, however, no opinion on this matter, we observe that the residue of personal estate specifically bequeathed is clearly applicable to the payment of debts; for there is nothing in the will of the testator to take the case out of the general and well settled rule, that the personal estate is the primary fund, and to be first applied for the payment of debts, and not to be exempted unless by express words or clear intention in the will of the deceased.
*430 *346] *In the second place. The order is erroneous because of its uncertainty. It authorizes the executor to sell “ the whole or such and so much of the real estate whereof the said John Lyell died seized in the county of Monmouth, as will be sufficient and necessary to pay his debts, together with all reasonable costs and charges.” The important duties which ought to have been performed by the court, are by this order wholly referred to the executors. If part be sufficient; and on the argument the sufficiency of part was not controverted, but rather conceded, the order has. not specified, nor the court directed, as the act plainly requires, what part should be sold.
.In order to prevent any misunderstanding or misapplication of the foregoing observations, and of the decision we are about to render, we think it proper explicitly to state, in the first place, that neither has reference to the course of proceeding prescribed in the act concerning the estates of persons who die insolvent, Rev. Laws 766; and secondly, that we express here no opinion on the validity, effect or operation of such an order as is now before us, when produced in evidence in the deduction of title in the prosecution or defence of an action of ejectment, or in any other case where the order may come incidentally or collaterally in question. In the case in the Court of Chancery already mentioned, the chancellor decided that the order under his examination, although in his opinion erroneous and irregular, yet being “ the order of a competent court, made in a matter of which they had jurisdiction, until reversed or set aside, could not be disregarded or treated as a nullity, when incidentally brought into question in another court, but must be considered as valid and effectual ” to sustain a sale made under it. The point is not before us; and we are therefore only at liberty to say, that no conclusion ought to be drawn that we differ from the chancellor.
Order of Orphans! Court reversed.